**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | C.A. No. *2:19-cv-00263-RMG-MGB* |
| **Plaintiff,** | |
| v. | **COMPLAINT AND JURY TRIAL DEMAND** |
| **MASSEY SERVICES, INC.,** | |
| **Defendant.** | |

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on a disability and retaliation, and to provide appropriate relief to Annie Mitchell ("Mitchell"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Massey Services, Inc. ("Defendant") discriminated against Mitchell when it denied her request for an accommodation and discharged her employment because of her disability, in violation of the ADA. The EEOC further alleges that Defendant refused to rehire Mitchell for her previous position because of her disability and in retaliation for her requesting a reasonable accommodation for her disability, also in violation of the ADA.

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of

the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Carolina, Charleston Division. Venue is proper in this Court under 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporate by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. That upon information and belief, Defendant is a domestic profit corporation with its primary place of business located in North Charleston, South Carolina.

5. That, at all relevant times, Defendant has continuously been doing business in the State of South Carolina and the city of North Charleston, and has continuously maintained at least 15 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

7. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Mitchell filed a Charge of Discrimination with the Commission alleging violations of the ADA by Defendant.

9. On September 20, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. On October 31, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since on or about August 2016, Defendant has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. §12112(a) and (b).

13. Mitchell is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Mitchell has a physical impairment, diverticulitis, that substantially limits her in the operation of major bodily functions, including functions of the digestive system.

14. Defendant terminated Mitchell's employment because of her physical impairment.

15. Mitchell requested a reasonable accommodation of medical leave, Defendant knew of Mitchell's disability at the time she requested the accommodation, but Defendant failed to provide the requested accommodation or any alternative accommodation for Mitchell's disability.

16. On May 12, 2016, Mitchell applied for the position of Office Manager at Defendant's Charleston Service Center via the website CareerBuilder.com.

17. On May 24, 2016, she attended a job fair and discussed her application with Defendant's Recruiter who agreed to set up an interview with Defendant.

18. On May 25, 2016, Mitchell met with Defendant's Regional Manager and then underwent a series of pre-employment assessments. On June 15, 2016, Mitchell met with the Regional Manager for a second time. On June 28, 2016, Mitchell had a third interview with the Regional Manager and received a conditional offer pending the results of a drug screen and physical examination.

19. The Regional Manager communicated to Mitchell during one of their meetings that Defendant was a solid company, that even when Defendant expanded through acquisitions, it strived to retain all employees, and that he was not aware of the company ever implementing any reduction in force or layoff.

20. Mitchell began her employment with Defendant on July 11, 2016, earning wages at a rate of $15.00 per hour.

21. As part of Defendant's onboarding process, Mitchell received hands-on training during a three-week period. An administrative trainer facilitated the training at the Charleston Service Center for two weeks. Then, the Office Manager, in Defendant's Columbia Service Center, provided Mitchell with training for an additional week.

22. Mitchell's job duties included answering customer calls, preparing a Daily Operating Report by 10:00 a.m., making bank deposits by 2:00 p.m., processing accounts payable vouchers daily, preparing and posting allowances, refunds and adjustments, and ordering supplies, among other things.

23. The Charleston Service Center was staffed by Mitchell, her direct supervisor, who was also the Service Manager, and a Service Technician.

24. During Mitchell's first week in the role of Office Manager, Defendant was actively recruiting applicants for the Charleston Service Center and exploring a potential move to a more attractive and visible office location.

25. Defendant's Regional Manager had also visited several potential sites and inquired if driving to a new location would be problematic for Mitchell, and she stated that it would not.

26. On August 22, 2016, Mitchell experienced a medical emergency prior to reporting for work at 8:00 a.m.

27. By 10:00 a.m., Mitchell was still having medical issues, therefore, she informed her supervisor and Defendant's Corporate Trainer that she was experiencing medical issues and needed to go to a hospital emergency room.

28. Shortly after Mitchell was admitted to the hospital for treatment, she called her supervisor and the Office Manager in the Columbia office to notify them of her condition. Mitchell advised that she had been admitted to the hospital for treatment, and that she would keep Defendant posted on her condition.

29. On August 23, 2016, Defendant's Benefits Manager called Mitchell. Mitchell returned her call and informed her that she had bleeding in her colon, that she was still undergoing medical evaluation, and that she was uncertain as to how long she would remain in the hospital. Mitchell assured the Benefits Manager that she would keep her apprised of her condition.

30. The next day, on August 24, 2016, the Benefits Manager called to advise Mitchell that she was not eligible for FMLA and, therefore, her employment was terminated effective August 23, 2016.

5

31. The Benefits Manager further advised Mitchell that she would email Mitchell her termination letter and the FMLA forms to be completed by her medical provider and stated that Mitchell could return to her position if she submitted the completed forms to Defendant within thirty (30) days.

32. On August 26, 2016, Mitchell received the termination letter and FMLA forms from Defendant. The termination letter stated specifically, that Mitchell [was] ineligible for FMLA, and, as a result, her services were terminated effective August 23, 2016. The letter also stated that Mitchell should complete the FMLA forms and return them to Defendant.

33. Prior to her discharge from the hospital on August 27, 2016, attending physician Dr. Julian Sora ("Dr. Sora") completed Mitchell's FMLA forms.

34. In the Return to Work Certification form, Dr. Sora indicated that Mitchell was able to perform the essential functions of her job with no restrictions and that she was released to work effective September 5, 2016.

35. In the Certification of Health Care Provider for Employee's Serious Health Condition, Dr. Sora indicated that Mitchell's condition commenced on August 23, 2016, that the probable duration of the condition was lifelong, that the condition may cause episodic flare-ups periodically preventing Mitchell from performing her job functions, and that it is medically necessary for her to be absent from work during the flare-ups as her condition may require hospital admission or surgery.

36. Dr. Sora certified in a separate document that Mitchell was expected to return to work on September 5, 2016.

37. On August 29, 2016, Mitchell submitted the completed FMLA forms and the doctor's note indicating a return to work date of September 5, 2016 to Defendant.

6

38. On August 30, 2016, Administrative Training Director recommended, via email, that Defendant eliminate the Office Manager position at the Charleston Service Center and that it not retain Mitchell.

39. Later that day, a Defendant executive responded to the Training Manager's recommendations by stating that an Office Manager was necessary because Defendant was in negotiations with a business that would add $60,000 to $75,000 per month in that particular market.

40. On September 2, 2016, Defendant's Benefits Manager called Mitchell and informed her that the Office Manager position was being eliminated due to a reduction in force because the amount of business generated by the Charleston Service Center did not support the need for an Office Manager.

41. Shortly thereafter, Mitchell contacted Defendant's HR Assistant and HR Manager to obtain an updated termination letter reflecting that she was laid off. Mitchell was advised that an updated letter would be issued. However, she never received an updated termination letter.

42. On November 17, 2016, Mitchell came across a Defendant Recruiter at a job fair. She inquired as to the status of the Office Manager position at the Charleston Service Center and learned that it remained vacant.

43. Mitchell explained to the Recruiter the events that led to her discharge including her medical condition, expressed interest in the position, and asked if she needed to re-apply.

44. The Recruiter advised Mitchell that it would not be necessary for her to re-apply and that he would discuss her interest with the Regional Manager and get back to her regarding next steps.

45. On December 2, 2016, Mitchell contacted the Recruiter to follow up on her application and asked if there was additional information that she could provide.

46. On December 3, 2016, the Recruiter responded that he had spoken with Defendant's Regional Manager about her rehire and the Regional Manager stated that he would reach out to Human Resources. Mitchell never heard back from Defendant.

47. On January 5, 2017, Defendant hired another applicant as Office Manager for its Charleston Service Center. However, the employee resigned without notice shortly after beginning to work for Defendant.

48. On January 24, 2017, Defendant's District Manager inquired internally about rehiring Mitchell. However, no one reached out to Mitchell about coming back to work.

49. On February 24, 2017, Mitchell saw the Office Manager position advertised on the job search website ziprecruiter.com. Mitchell then visited Defendant's website and confirmed it was seeking an Office Manager for its Charleston Service Center.

50. Mitchell did not re-apply because she had just gone through the application process and was advised by the Recruiter that it was not necessary.

51. At the time of her application, Mitchell was qualified for the job as Office Manager and could perform the essential functions of that job with or without a reasonable accommodation.

52. The effect of the practice(s) complained of above has been to deprive Mitchell of equal employment opportunities and, otherwise, adversely affect her status as an employee because of her disability and because she exercised her rights under the ADA by making a request for a reasonable accommodation.

53. The unlawful employment practices complained of above were intentional.

54. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Mitchell.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all other persons in active concert or participation with it, from denying reasonable accommodations to employees with disabilities, terminating the employment of employees with disabilities, retaliating against employees due to their disability status, and/or because they engaged in protected activity under the ADA, and engaging in any other employment practices that discriminate on the basis of disability.

B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make Mitchell whole by providing appropriate back pay with pre-judgment interest, front pay, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.      Order Defendant to make Mitchell whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in an amount to be determined at trial.

E.      Order Defendant to make Mitchell whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F.      Order Defendant to pay punitive damages to Mitchell for its malicious and/or reckless conduct described above, in an amount to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

DATED this the 30th day of January, 2019.

Respectfully submitted:

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney
Atlanta District Office

***s/ Rachael S. Steenbergh-Tideswell***
RACHAEL S. STEENBERGH-TIDESWELL
South Carolina Federal Bar No. 10867
Senior Trial Attorney
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Telephone: (704) 954-6472
Facsimile: (704) 954-6412
Email: rachael.steenbergh@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**